**No. 17-30867**

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

**VANTAGE HEALTH PLAN, INC.**
*Plaintiff-Appellee*

**VERSUS**

**WILLIS-KNIGHTON MEDICAL CENTER, doing business as WILLIS-KNIGHTON HEALTH SYSTEM; ET AL.**
*Defendants*

**VERSUS**

**HUMANA HEALTH BENEFIT PLAN OF LOUISIANA, INC.**
*Appellant*

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA – NO. 5:15-CV-02057**

## ORIGINAL BRIEF OF NON-PARTY RESPONDENT-APPELLANT HUMANA HEALTH BENEFIT PLAN OF LOUISIANA, INC.

Harry Rosenberg, (Bar #11465)
Christopher K. Ralston, (Bar #26706)
Arthur R. Kraatz, (Bar #35194)
**Phelps Dunbar LLP**
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  504-566-1311
Facsimile:  504-568-9130
Email:       harry.rosenberg@phelps.com
             ralstonc@phelps.com
             arthur.kraatz@phelps.com

PD.22904242.2

# CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. BRFHH Shreveport, LLC

2. David A Ettinger
   Jason R Abel
   Lara Fetsco Phillip
   Honigman Miller et al, Counsel for BRFHH Shreveport, LLC

3. Jerry Edwards
   Blanchard Walker et al, Counsel for BRFHH Shreveport, LLC

4. Michael M. Meunier
   Sullivan Stolier et al, Counsel for BRFHH Shreveport, LLC

5. Vinson J Knight
   Coats Rose et al, Counsel for BRFHH Shreveport, LLC

6. Vantage Health Plan, Inc.

7. James R Chastain, Jr.
   Linda G Rodrigue
   Scott L Zimmer
   S Price Barker
   Kean Miller, Counsel for Vantage Health Plan Inc.

8. Christopher J Kelly
   Daniel K Storino
   Reginald R Goeke
   Robert E Bloch

i

Scott P Perlman
Mayer Brown, Counsel for Vantage Health Plan Inc.

9.    Willis-Knighton Medical Center

10.    Layne E Kruse
Darryl W Anderson
Eliot Turner
Lauren Etlinger
Lesley Reynolds
Marc Collier
Norton Rose Fulbright, Counsel for Willis-Knighton Medical Center

11.    Humana Health Benefit Plan of Louisiana, Inc.

12.    Harry Rosenberg
Christopher K Ralston
Arthur R Kraatz
Phelps Dunbar, LLP, Counsel for Humana Health Benefit Plan of Louisiana, Inc.

13.    Shari Ross Lahlou
Crowell & Moring, Counsel for Humana Health Benefit Plan of Louisiana, Inc.

SO CERTIFIED, this the 23rd day of January, 2018.

*/s/ Harry Rosenberg*
Harry Rosenberg
Christopher K. Ralston
Arthur R. Kraatz
Attorneys for Non-Party Respondent-
Appellant Humana Health Benefit Plan of
Louisiana, Inc.

- ii -

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant Humana Health Benefit Plan of Louisiana, Inc. respectfully requests oral argument.  Humana believes that oral argument will be useful to the Court because this appeal presents an important legal issue regarding the protection of confidential third-party documents from public disclosure.  Humana respectfully suggests that oral argument will allow the parties an opportunity to set forth more fully their positions with respect to the important legal issue presented by this appeal.

PD.22904242.2

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ....................................................i

STATEMENT REGARDING ORAL ARGUMENT ......................................... iii

TABLE OF CONTENTS.................................................................................iv

TABLE OF AUTHORITIES ..........................................................................vi

STATEMENT OF JURISDICTION................................................................1

STATEMENT OF THE ISSUES......................................................................2

STATEMENT OF THE CASE .........................................................................2

SUMMARY OF THE ARGUMENT ...............................................................8

ARGUMENT ...................................................................................................9

I.      STANDARD OF REVIEW .......................................................9

II.     THE SEALING STANDARD ....................................................9

III.    THE DISTRICT COURT ERRED IN COMPLETELY
        FAILING TO CONSIDER, MUCH LESS WEIGH,
        WHETHER THE PUBLIC HAD AN INTEREST IN
        VIEWING HUMANA'S CONFIDENTIAL BUSINESS
        RECORDS .................................................................................13

        A.      Most of the documents unsealed by the District Court
                are not judicial documents to which the public has any
                arguable right of access. .............................................13

        B.      The District Court erred in failing to identify or weigh
                the public's interest in viewing the few Humana
                documents that were judicial records. .........................18

                1.      Humana's documents are not relevant to any
                        claim at issue in the litigation............................20

- iv -

2. The District Court further abused its discretion in unsealing admittedly irrelevant information. ......................24

IV. Humana demonstrated that it will be substantially harmed by the disclosure of its confidential business information..........................26

V. When properly considered under this Court's sealing analysis, Humana's documents should be sealed. .................................................28

CONCLUSION ......................................................................................31

CERTIFICATE OF SERVICE ..........................................................33

CERTIFICATE OF COMPLIANCE .................................................34

PD.22904242.2

# TABLE OF AUTHORITIES

## Cases

*Bear Ranch, LLC v. Heartbrand Beef, Inc.*,
   No. 6:12-CV-14, 2014 WL 12599343 (S.D. Tex. May 14, 2014) ...............11, 27

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................23

*Belo Broad. Corp. v. Clark*,
   654 F.2d 423 (5th Cir. 1981) ...............................................................11

*Benavides v. Chicago Title Ins. Co.*,
   636 F.3d 699 (5th Cir. 2011) ...................................................................9

*Bollore S.A. v. Imp. Warehouse, Inc.*,
   448 F.3d 317 (5th Cir. 2006) ...................................................................9

*In re Boston Herald, Inc.*,
   321 F.3d 174 (1st Cir. 2003)...................................................................15

*Brazos River Auth. v. GE Ionics, Inc.*,
   469 F.3d 416 (5th Cir. 2006) ...................................................................9

*In re Copley Press, Inc.*,
   518 F.3d 1022 (9th Cir. 2008) ..................................................................2

*Dickson Marine Inc. v. Panalpina, Inc.*,
   179 F.3d 331 (5th Cir. 1999) ...................................................................9

*F.T.C. v. AbbVie Prod. LLC*,
   713 F.3d 54 (11th Cir. 2013) .................................................................15

*Henry v. Lake Charles Am. Press, L.L.C.*,
   566 F.3d 164 (5th Cir. 2009) ...................................................................1

*IDT Corp. v. eBay*,
   709 F.3d 1220 (8th Cir. 2013) ...............................................................15

*Nixon v. Warner Communications, Inc.*,
   435 U.S. 589 (1978)..................................................................10, 18, 26

- vi -

*Robroy Indus. - Texas, LLC v. Thomas & Betts Corp.*,
    No. 2:15-CV-512-WCB, 2016 WL 325174 (E.D. Tex. Jan. 27,
    2016) ..................................................................................................13

*S.E.C. v. Van Waeyenberghe*,
    990 F.2d 845 (5th Cir. 1993) ......................................................9, 10, 19, 25

*Saint Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys., Ltd.*,
    No. 1:12-CV-00560-BLW, 2015 WL 632311 (D. Idaho Feb. 13,
    2015) ..........................................................................................12, 27, 30

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984)..................................................................................13

*Shell Expl. & Prod. Co. v. Robinson*,
    No. 01-1417, 2001 WL 1490954 (E.D. La. Nov. 20, 2001)..............................11

*ThermoTek, Inc. v. WMI Enterprises*,
    LLC, No. 3:10-CV-2618-D, 2011 WL 1485421 (N.D. Tex. Apr.
    19, 2011) ..............................................................................................11

*United States v. Amodeo*,
    44 F.3d 141 (2d Cir. 1995) ......................................................................14

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995) ................................................................14, 18

*United States v. Andreas*,
    150 F.3d 766 (7th Cir. 1998) ....................................................................15

*United States v. Holy Land Found. For Relief 7 Dev.*,
    624 F.3d 685 (5th Cir. 2010) ....................................................................10

*United States v. HSBC Bank USA, N.A.*,
    863 F.3d 125 (2d Cir. 2017) ............................................................10, 14, 15

*United States v. Sealed Search Warrants*,
    868 F.3d 385 (5th Cir. 2017) ..............................................................*passim*

PD.22904242.2

**Statutes**

28 U.S.C. § 1291 ............................................................................................1

## STATEMENT OF JURISDICTION

This is an appeal from an interlocutory ruling of the district court that ordered the unsealing of certain confidential and proprietary documents produced by Non-Party Respondent-Appellant, Humana Health Benefit Plan of Louisiana, Inc. ("Humana") pursuant to a subpoena served on it. The district court's ruling ordered the immediate unsealing of the virtually all of Humana's documents with isolated redactions. Those limited redactions failed to protect Humana's trade secrets and non-public business data, particularly when it is one of Humana's alleged competitors that seeks blanket disclosure.

This Court has jurisdiction to review the unsealing order pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. The collateral order doctrine provides that certain interlocutory orders are nonetheless "final decisions" for the purpose of this Court's jurisdiction under § 1921. Specifically, to fall within the ambit of the doctrine "an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment."[1] Here, the District Court's order (1) conclusively determined that Humana's documents would be filed unsealed into the public record, (2) resolves an

---

[1] *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009).

- 1-

important issue regarding the confidentiality of Humana's documents that is totally separate from the merits of the underlying action, and (3) if implemented, will be unreviewable on appeal from final judgment because Humana will be unable to reclaim its documents as confidential once they enter the public domain.[2]

## STATEMENT OF THE ISSUES

The sole issue presented on this appeal is whether the District Court failed to properly adhere to this Court's precedent when it ordered the immediate unsealing of a large volume of Humana's confidential and proprietary documents without first determining whether the public had any genuine interest in viewing the specific sensitive documents at issue.

## STATEMENT OF THE CASE

This appeal originates from an antitrust action currently pending in the Western District of Louisiana.  Humana is not a party to that litigation.  In connection with the discovery process in that case, Humana was issued two successive subpoenas by the Plaintiffs, seeking various information related to Humana's confidential contract negotiations with the Defendant, Willis-Knighton Medical Center.  Humana initially objected to producing such information given the commercial sensitivity of its detailed contract negotiations, but ultimately

---

[2] *See In re Copley Press, Inc.*, 518 F.3d 1022, 1025–26 (9th Cir. 2008) (holding that order unsealing documents was immediately reviewable under the collateral order doctrine).

- 2 -

PD.22904242.2

agreed to produce certain limited information in reliance on a Protective Order that the District Court had entered in the matter.[3]  Humana particularly relied on the "attorneys eyes only" provisions of the Protective Order because one of the plaintiffs in the case, Vantage Health Plan, Inc. ("Vantage"), is another health insurer.[4]  Humana was understandably concerned about the prospect that its confidential and commercially sensitive documents would fall into the hands of another health plan.  But, judicially assured that the Protective Order provided it appropriate protections, Humana produced the documents with appropriate confidentiality designations.

Following Humana's last production in response to the subpoenas, the landscape of the litigation drastically changed.  On June 28, 2017, the District Court held a status conference with the parties at which the District Court raised the issue of filing pleadings under seal.[5]  Apparently, the parties to the litigation had developed a habit of seeking to seal nearly every substantive document in the litigation.  The District Court was particularly concerned because the then-recently filed dispositive motions were completely sealed.  In an effort to curtail the practice of *pro forma* sealing, the District Court modified the Protective Order.  To

---

[3] *See* ROA.1095.

[4] *See* ROA.1100.

[5] *See* ROA.4278.

- 3 -

address the pending dispositive motions, the District Court established a procedure whereby the parties would confer with non-parties (such as Humana) whose confidential documents had been attached to the dispositive and *Daubert* motions.[6] To the extent that a third party maintained that its confidential documents should be sealed, the parties were instructed to file either (1) an appropriate motion to seal any confidential documents or (2) a rule to show cause with respect to any document as to which the parties did not agree should be sealed. Importantly, the District Court's Order only applied to documents then on file as exhibits to the dispositive and *Daubert* motions.[7]

Humana was contacted by Vantage's counsel on the Court's July 7, 2017 deadline.[8] Vantage's counsel informed Humana that one Humana document had been attached to the dispositive motions and that certain of Humana's data was referenced in an expert report. Because the Humana e-mail at issue contained detailed confidential and commercially sensitive contract negotiations, Humana insisted that the document be maintained as "attorneys eyes only" and filed under seal.

---

[6] *See* ROA.4280.

[7] ROA.4280.

[8] ROA.4481.

- 4 -

Two weeks later, Vantage contacted Humana and identified an additional forty-nine documents that it intended to seek leave to unseal.[9]  Notably, those additional forty-nine documents had not been filed, and Vantage was not then seeking to file them, in connection with any pleading in the case.[10]  Instead, Vantage indicated that it *might* consider using the documents in connection with future filings.[11]  Thus, instead of placing a single Humana e-mail before the Court (as the Court had ordered), Vantage sought leave of Court to file *en masse* fifty Humana documents into the public record in connection with some future, undisclosed, purpose.[12]

Humana timely objected to Vantage's attempts to unseal its documents and specifically included a declaration from a Humana employee explaining that its confidential contract negotiations were commercially sensitive, contained current Humana proprietary data, were maintained as confidential internally at Humana,

---

[9] ROA.4483.

[10] While not initially clear, now that the briefing on the summary judgment motions is complete, it is clear precisely how many of the challenged document Vantage actually filed in the case.  Vantage actually attached only 11 of the 49 additional documents to its briefing.  Thus, of the 50 Humana documents that Vantage asked the District Court to unseal, only 12 have actually been attached to a pleading.  *Compare* ROA.34969-35294 (exhibits to Vantage's Rule to Show Cause) *with* ROA.41032-41135 (documents actually filed by Vantage in connection with its supplemental briefing).

[11] ROA.4483.

[12] ROA.34239.

- 5 -

and could cause significant competitive harm if disclosed to the marketplace and Humana's competitors.[13]

The District Court held a two day hearing on the sealing issues, which involved over one hundred documents from various parties and non-parties, on September 15, 2017 and October 13, 2017.[14]  During the course of the hearing, the Court ordered the redaction of certain limited information in Humana's documents, but generally ordered that Humana's confidential and commercially sensitive contract negotiations be unsealed and filed for public consumption.[15]  At the conclusion of the October 13, 2017 hearing, the Court issued a minute entry setting deadlines for the refiling of the summary judgment and *Daubert* motions. [16]  The Court also set a deadline for the filing of two new pleadings that had not previously been filed, two supplemental briefs (one each from Vantage and Willis-Knighton) regarding Willis-Knighton's motion to dismiss a claim Vantage purported to assert (but had not pled) ostensibly concerning Willis-Knighton's contract with the non-

---

[13] ROA.4471; *see also* ROA.4484 (declaration of Humana employee explaining sensitive nature of documents).

[14] The transcripts of the hearings are at ROA.16696 and ROA.16865.

[15] ROA.5482-5483.

[16] ROA.5482.

- 6 -

party Humana. Those briefs were filed in mid-November.[17] When Vantage's brief was filed, Humana discovered that the majority of the documents placed at issue by Vantage were not attached as exhibits. Instead, Vantage only attached 11 of the 49 "additional" documents that it belatedly placed at issue in the sealing hearings. Stated differently, 75% of the Humana documents that Vantage asked the District Court to unseal have not been attached to any pleading filed in the case. Nonetheless, because the District Court ordered that Humana's documents *could* be filed unsealed, absent a reversal from this Court, Vantage is free to file Humana's confidential documents into the public record at its leisure and *sans* any nexus with a pleading filed below.

Shortly after the District Court's unsealing ruling was issued, Humana appealed the ruling to this Court.[18] Humana also sought a stay of the unsealing order in the District Court. The District Court granted the stay, but only for two weeks to permit Humana to seek a stay from this Court.[19] This Court granted a stay pending appeal.

---

[17] ROA.4101 (Vantage's Supplemental memorandum); ROA.41139 (Willis-Knighton's Supplemental Memorandum).

[18] ROA.5484.

[19] ROA.6937.

- 7 -

## SUMMARY OF THE ARGUMENT

The District Court abused its discretion when it ordered the unsealing of Humana's confidential business records for three reasons.  First, the District Court ordered the prospective unsealing of documents that were not judicial records because, at the time of the sealing hearing, 49 of the 50 Humana documents that Vantage sought to unseal had not been filed in connection with any pleading.[20] Second, the District Court disregarded this Court's clear instructions requiring it to carefully identify and weigh the public's interest (if any) in accessing Humana's confidential documents.  Finally, the District Court ignored Humana's clear and uncontroverted evidence regarding the substantial harm it would sustain if the documents were unsealed.  Correspondingly, the District Court never addressed the purpose and sanctity of the Protected Order accepted by the litigants—the very Protective Order that judicially stated it would protect third parties, like Humana, from harm.  Because the District Court failed to identify and weigh these important concerns, as this Court has consistently required, its unsealing ruling is an abuse of discretion and should be reversed.

---

[20] As of the filing of this brief, over 75% of the Humana documents ordered unsealed by the District Court have not been attached to any pleading.

- 8 -

## ARGUMENT

### I.    STANDARD OF REVIEW

This Court reviews the decision of a district court relative to sealing or unsealing of court records for abuse of discretion.[21]   Where, however, a district court's ruling is based on an application of the wrong legal rule, "the standard is *de novo*."[22]   Put differently, "this standard can be phrased as stating that an error of law is an abuse of discretion."[23]   Indeed, "a court by definition abuses its discretion when it applies an incorrect legal standard."[24]   Moreover, "[a] court abuses its discretion when it acts in an unreasonable or arbitrary manner ... without reference to any guiding rules and principles."[25]   A district court also abuses its discretion "if it fails to address and balance the relevant principles and factors."[26]

### II.    THE SEALING STANDARD

This Court and its sister circuits have developed a well-established framework for determining whether judicial records can be sealed from public view.   Underlying this framework is the "presumption that all trial proceedings

---

[21] *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993).

[22] *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 423 (5th Cir. 2006).

[23] *Id.*

[24] *Benavides v. Chicago Title Ins. Co.*, 636 F.3d 699, 701 (5th Cir. 2011).

[25] *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 321 (5th Cir. 2006).

[26] *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 341 (5th Cir. 1999).

- 9 -

should be subject to scrutiny by the public," which stems from the public's common law right to view records of judicial proceedings.[27]  However, the public's common law right to inspect and copy judicial records is not absolute.[28]  Instead, district courts retain the discretion to seal judicial records under certain circumstances.  "In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure."[29]

To guide the district court's exercise of discretion, this Court has established three essential inquires that a district court must conduct when deciding whether to seal certain documents.  First, the district court must ascertain whether the documents at issue are "judicial records."[30]  Second, the court must identify and weigh the precise public interest in the specific judicial records at issue.[31]  Third,

---

[27] *United States v. Holy Land Found. For Relief 7 Dev.*, 624 F.3d 685, 690 (5th Cir. 2010); *see also Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).

[28] *Van Waeyenberghe*, 990 F.2d at 848 (citing *Nixon*, 435 U.S. at 598).

[29] *Id.*

[30] *United States v. Sealed Search Warrants*, 868 F.3d 385, 393 (5th Cir. 2017) (explaining that the common law right of access to court records "applies so long as a document is a judicial record"); *id.* at 396 n.4 (characterizing the issue of whether a document is a judicial record as "a gateway question"); *see also United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 134 (2d Cir. 2017) ("The threshold merits question in this case is whether the [document at issue] is a judicial document, as only judicial documents are subject to a presumptive right of public access, whether on common law or First Amendment grounds.").

[31] *Id.* at 395 ("In the Fifth Circuit, the common law right of access to judicial records has consistently been addressed on a case-by-case basis.").

- 10 -

the court must identify and weigh the private interests favoring nondisclosure.[32]

Once the district court has completed these three essential inquires, it must weigh the public interest (if any) in viewing the records against the private interests favoring nondisclosure.[33]

As this Court has long-emphasized, the district court's discretion to seal judicial records must "be exercised in light of the relevant facts and circumstances of the particular case."[34] Indeed, access to court files can be denied "where court files might . . . become a vehicle for improper purposes."[35] This Court has made it clear that the paramount obligation of a district court faced with a request to seal documents is to balance the competing interests in play.[36] Specifically, courts routinely find sealing warranted to protect the proprietary business information of a party from the eyes of prying competitors.[37] In the specific context of contracts between health insurance companies and hospitals, courts have explained that

---

[32] *Id*. at 396.

[33] *Id*.

[34] *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 430 (5th Cir. 1981).

[35] *Id*.

[36] *Id*.

[37] *See, e.g., Bear Ranch, LLC v. Heartbrand Beef, Inc.*, No. 6:12-CV-14, 2014 WL 12599343, at *1 (S.D. Tex. May 14, 2014) (ordering exhibits sealed because they "at least arguably refer to proprietary information."); *ThermoTek, Inc. v. WMI Enterprises*, LLC, No. 3:10-CV-2618-D, 2011 WL 1485421, at *9 (N.D. Tex. Apr. 19, 2011); *Shell Expl. & Prod. Co. v. Robinson*, No. 01-1417, 2001 WL 1490954, at *1 (E.D. La. Nov. 20, 2001).

- 11 -

documents containing "some mixture of negotiating strategy, prices, rates, projections, and other financial information" should be sealed because such information would, if revealed publicly, give would-be competitors an unfair advantage.[38]

Vantage's request to unseal Humana's documents wilts in the light of the forgoing standard.  As Humana explains in detail below, most of the documents that Vantage sought to unseal are not judicial records to which any arguable public interest applies and neither Vantage nor the District Court made any effort to articulate what *specific* interest, if any, the public has in viewing the few Humana documents that are judicial records.  Moreover, Humana demonstrated below that its substantial interest in maintaining the confidentiality of its business strategy and contract negotiations warranted the sealing of its confidential business records.

---

[38] *Saint Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, No. 1:12-CV-00560-BLW, 2015 WL 632311, at *5 (D. Idaho Feb. 13, 2015).

- 12 -

## III. **THE DISTRICT COURT ERRED IN COMPLETELY FAILING TO CONSIDER, MUCH LESS WEIGH, WHETHER THE PUBLIC HAD AN INTEREST IN VIEWING HUMANA'S CONFIDENTIAL BUSINESS RECORDS**

### A. **Most of the documents unsealed by the District Court are not judicial documents to which the public has any arguable right of access.**

At the time the District Court considered Vantage's request to unseal Humana's business records, 49 of the 50 Humana documents at issue had not been filed into the public record.[39]    Specifically, at the time Vantage requested the unsealing of Humana's documents, the documents had only been produced in response to a subpoena (subject to and in reliance on a protective order).    The Supreme Court, however, has specifically held that the public does not have a common-law right of access to materials exchanged as part of the discovery process because such materials are not judicial records.[40]    Thus, at the time

---

[39] One of the Humana documents placed at issue by Vantage, a single e-mail chain, was attached to the original summary judgment briefing.  Vantage sought an order permitting it to file the remaining Humana documents unsealed at some undisclosed future time because the documents "may be used in connection" with unspecified future filings.  ROA.4483.

[40] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("[P]retrial depositions and interrogatories are not public components of a civil trial.  Such proceedings were not open to the public at common law and, in general, they are conducted in private as a matter of modern practice.  Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); *see also Robroy Indus. - Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2016 WL 325174, at *2 (E.D. Tex. Jan. 27, 2016) (collecting cases and holding that discovery materials are not judicial records).

- 13 -

Vantage sought to unseal Humana's documents *carte blanche*, nearly all of the confidential documents were not "judicial records" to which the public had *any* arguable right of access; and that remains so as of this filing.

While this Court has not precisely defined the scope of judicial records to which the public has a right of access, other circuits have addressed this issue with relative consistency. For example, the Second Circuit has held that "to qualify as a 'judicial document' subject to a presumptive right of public access, the item filed must be relevant to the performance of the judicial function and useful in the judicial process."[41] Moreover, the Second Circuit has explicitly held that "documents passed between the parties in discovery lie entirely beyond the reach of the presumption of public access."[42] Importantly, in an effort to prevent litigants from abusively filing irrelevant documents into the public record merely to facilitate their public release, the Second Circuit has long held that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document."[43] Thus, at least in the Second Circuit, a document's mere presence in the court record does not transform the document into a judicial record to which the common-law right of access attaches. Instead, trial courts must

---

[41] *HSBC*, 863 F.3d at 134.

[42] *Id.* at 139 (*citing United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).

[43] *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995).

- 14 -

ensure that the document is "relevant to the performance of the judicial function and useful in the judicial process" before ordering its release to the public.[44] Several other circuits employ similar standards.[45]

Whatever the definition of a "judicial record," Vantage cannot persuasively contend that documents produced by Humana in reliance on a protective order and not yet filed in the court record are judicial records. Thus, it was legal error for the District Court to order the unsealing of any Humana document that was not a judicial record at the time of the hearing and the unsealing order should be reversed for that reason alone.[46]

Humana anticipates that Vantage may argue that some of the unsealed Humana documents were filed into the public record <u>after</u> the unsealing hearing

---

[44] *HSBC*, 863 F.3d at 134.

[45] *See, e. g., In re Boston Herald, Inc.*, 321 F.3d 174, 190 (1st Cir. 2003) (holding that documents were not judicial records to which the public has a right of access); *United States v. Andreas*, 150 F.3d 766, 768 (7th Cir. 1998) (citing *Amodeo* favorably in considering appeal from a district court order denying a newspaper's motion make public certain papers and materials related to a criminal prosecution); *IDT Corp. v. eBay*, 709 F.3d 1220 (8th Cir. 2013) (applying the *Amodeo* framework in finding that there was little public interest in the accessing antitrust complaint because the court never adjudicated any aspect of the claims on the merits and finding that there was no clear error in the district court's finding that the document contain confidential and competitively sensitive information including trade secrets and other confidential research); *F.T.C. v. AbbVie Prod. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) (holding that whether a document is a judicial record is "dependent on the type of filing it accompanied").

[46] Specifically, exhibits E-3 through E-51 to Vantage's rule to show cause had not been filed and, therefore, were not judicial records at the time of the District Court's unsealing order.

- 15 -

and thus are now judicial records.[47] That argument, however, is deeply flawed. To be clear, Vantage only filed one memorandum *after* the unsealing hearing that attached Humana's documents—its supplemental brief in opposition to Willis-Knighton's Motion for Summary Judgement.[48] In connection with that filing, Vantage attached only 12 of the Humana documents ordered unsealed by the District Court. Thus, 38 of the 50 Humana documents that Vantage sought to unseal have never been filed in the District Court. Nonetheless, the District Court ordered that those documents may be filed unsealed at any time without further notice to Humana or leave of court.[49] Accordingly, absent a reversal from this Court, Vantage is free to file Humana's confidential business records into the public record in connection with any inconsequential future filing or to attach them

---

[47] For clarity, at the time of the unsealing hearing, the briefing on the summary judgment and *Daubert* motions was largely complete. Around the same time as the unsealing hearing, the District Court ordered Vantage and Willis-Knighton to each submit a single supplemental brief regarding Willis-Knighton's motion for summary judgment. ROA.5340. The briefs were limited to one of the several issues raised in Willis-Knighton's motion, specifically, its request that the District Court prevent Vantage from pursuing any claim related to Willis-Knighton's alleged relationship with Humana because no such claim had been pled in the litigation. Following the District Court's unsealing hearing, Vantage attached a handful of Humana documents to its supplemental brief. *See* ROA.41011. Of course, the filing of these few Humana documents cannot cure Vantage's pleading deficiency.

[48] ROA.41011.

[49] The District Court did order certain limited redactions as to a few of the documents. As a general matter, however, the court ordered that nearly all of the substance in the documents need not be redacted. In short, Humana's negotiations with Willis-Knighton, Humana's non-public financial data, and its private data will become an open book at Vantage's whim unless this Court rectifies this situation.

PD.22904242.2

to some future motion, regardless of whether the Humana documents are relevant to such a filing. In essence, the District Court prospectively ordered that Humana's documents can be unsealed without knowing when or how those documents would be filed or even whether the documents, if filed, would be relevant to any issue before the court. Because these highly proprietary documents can be filed without notice to Humana, Humana is powerless (absent relief on this appeal) to protect its confidential documents from arbitrary future disclosures.

That result clearly illustrates the depth of the District Court's error in failing to consider whether the Humana documents at issue were judicial records. Because over 75% of the unsealed Humana documents have never been filed, and are not judicial records, the public has absolutely no interest in accessing the records.[50] If Vantage ever files the Humana documents, that filing will occur without any supervision from the District Court. That is, the District Court will never undertake the fact-specific analysis required by this Court to determine whether the documents are actually judicial records to which the public has some arguable right of access or the proper weight to be afforded to any such right. Stated another way, Humana will be completely deprived of any opportunity to protect its confidential business records. Accordingly, the District Court's order

---

[50] *Sealed Search Warrants*, 868 F.3d at 393.

- 17 -

unsealing Humana documents that were not judicial records is erroneous and should be reversed.

**B.    The District Court erred in failing to identify or weigh the public's interest in viewing the few Humana documents that were judicial records.**

Both this Court and the Supreme Court have recognized that the public's right of access to specific judicial records is neither absolute nor, importantly, the same in every case.[51]    Notably, this Court has consistently refused to "assign[] a particular weight to the presumption in favor of access;" instead, this Court has insisted that the public's right of access to judicial records must be evaluated on a case-by-case basis, and a formulaic insistence that the public has an unfettered right to view every document connected to a judicial proceeding will not do.[52] Other circuits have correctly noted that a court cannot possibly identify and weigh the public's interest in accessing a particular document unless the court can evaluate how the document is relevant to the proceeding.[53]    Where district courts

---

[51] *Nixon*, 435 U.S. at 598–99 ("It is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as the common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate."); *Sealed Search Warrants*, 868 F.3d at 395 ("the common law right of access to judicial records has consistently been addressed on a case-by-case basis.").

[52] *Sealed Search Warrants*, 868 F.3d at 393.

[53] *Amodeo*, 71 F.3d at 1049 ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason.  Documents that

- 18 -

PD.22904242.2

engage in a formulaic or nonexistent analysis of appropriate weight to be afforded to the public's right of access, this Court has not hesitated to reverse.[54]

Here, Vantage made no effort to articulate the *specific* public interest in Humana's documents.  While it expounded upon the public's interest in antitrust cases generally, Vantage made no discernable effort to articulate the public's interest in specifically viewing Humana's (a non-party) confidential business records.  Moreover, other than the public's general interest in open proceedings, the District Court identified no specific public interest in viewing Humana's documents.[55]  The District Court's decision to skip this crucial step in the sealing analysis constituted an abuse of its discretion and alone justifies reversal.  Moreover, the District Court's failure to consider the relevance (if any) of Humana's documents was yet an additional abuse of discretion.  This Court has articulated plain parameters within which such discretion can be properly exercised.[56]

---

play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach . . . and stand on a different footing than ... a motion filed by a party seeking action by the court, . . . or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions."  (internal citations omitted)).

[54] *See e.g. Sealed Search Warrants*, 868 F.3d at 397-98; *Van Waeyenberghe*, 990 F.2d at 849.

[55] ROA.16710.

[56] *See Van Waeyenberghe*, 990 F.2d at 848.

- 19 -

### 1. Humana's documents are not relevant to any claim at issue in the litigation.

An explanation of the context in which Humana's documents were offered illustrates that the public has little, if any, interest in viewing Humana's documents. Following the completion of discovery, Willis-Knighton filed an extensive motion for summary judgment on Vantage's claims.[57] At the end of the motion, Willis-Knighton asked the District Court to dismiss an unpled claim that Vantage had just mentioned at the end of the discovery period.[58] That unpled claim was related to the contract between Willis-Knighton and Humana. Willis-Knighton moved to dismiss the claim primarily because it had not been pled and because, even if pled, it could not succeed as a matter of law.[59] Vantage has used Humana's documents in connection with its opposition on that issue and, after the unsealing hearing, in connection with its supplemental brief regarding the same issue.

The public has no interest in accessing Humana's confidential and proprietary documents because those documents relate to a claim that does not exist. Vantage's claims in this case are contained in Plaintiffs' Amended

---

[57] ROA.7111 (unsealed version of Willis-Knighton's motion refiled following sealing hearings).

[58] ROA.7152.

[59] ROA.7151-7155.

- 20 -

Complaint.[60]  The Amended Complaint contains over 80 pages of detailed factual allegations but, tellingly, <u>Humana is not mentioned once in the 233 paragraph complaint</u>.  Nonetheless, Vantage states in opposition to Willis-Knighton's motion that it has asserted a claim that the alleged agreement between Humana and Willis-Knighton violated Section 1 of the Sherman Act.[61]  Vantage's Amended Complaint contains no such claim.  Counts I and VII of the Amended Complaint assert claims under the Clayton Act, counts III, IV, V, and VI assert claims under Section 2 of the Sherman Act, and counts II and VIII assert Section 1 claims.  Neither of the Section 1 claims, however, has anything to do with Humana.

Count II specifically alleges that:

> Each of the physician services agreements between Willis-Knighton and LSU Shreveport, as well as the overall agreement between Willis-Knighton and LSU Shreveport with regard to commercially insured patients, described above, and the agreement between Willis-Knighton and LSU with regard to the takeover of UH-Shreveport, is a contract, combination and conspiracy within the meaning of Section 1 of the Sherman Act (15 U.S.C. § 1).[62]

Count II of the Amended Complaint only addresses alleged physician services agreements between Willis-Knighton and LSU Shreveport and contains

---

[60] ROA.2509.

[61] ROA.12028.

[62] ROA.2586 at ¶201.

absolutely no mention of alleged exclusivity in the Medicare Advantage market, any alleged agreement between Willis-Knighton and Humana, or any other allegation that could plausibly be described as asserting a claim related to an alleged agreement between Willis-Knighton and Humana.

Not does count VIII assert such a claim.  Indeed, count VIII alleges that:

> The anticompetitive agreements involving physicians entered into by Willis-Knighton to date, including the acquisitions described above, and within the past four years, have lessened competition substantially in interstate trade and commerce in the relevant physician markets and the relevant market for acute care hospital services in violation of Section 1 of the Sherman Act, 15. U.S.C. § 1.[63]

Thus, Count VIII, like Count II, focuses exclusively on alleged agreements relating to physician services and Willis-Knighton's alleged acquisitions of physician practices in the Shreveport area.  Again, the Amended Complaint contains no allegation that plausibly asserts a claim related to any alleged agreement between Humana and Willis-Knighton.

Also telling are Vantage's allegations regard the relevant geographic markets for its antitrust claims.[64]  Vantage's definition of the relevant markets

---

[63] ROA.2594 at ¶ 230.

[64] *See* ROA.2557-2559 at ¶¶ 117-123

- 22 -

focuses on the provision of hospital and physician services.[65] Nowhere is there any mention of the market for Medicare Advantage plans. Similarly, Vantage makes detailed allegations regarding the relevant product markets.[66] Once again, the allegations are focused on specific hospital and physician practice areas. No effort is made to describe the market for Medicare Advantage plans—an insurance product.

Simply put, Vantage's Amended Complaint is devoid of allegations pertaining to Humana, the market for Medicare Advantage plans, any alleged agreements between Willis-Knighton and Humana, or any other allegation that could plausibly be described as asserting a claim regarding an alleged conspiracy between Humana and Willis-Knighton. Indeed, Vantage's argument that it has asserted a claim with respect to a conspiracy allegedly involving Humana strains credulity in light of the fact that Humana's name does not appear in the complaint.

As the Supreme Court has explained, in the context of a Sherman Act Section 1 case no less, to state a claim a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests."[67] Vantage cannot assert any plausible argument that its Amended Complaint meets this standard with

---

[65] ROA.2547.

[66] ROA.2547-2557 at ¶¶ 84-116.

[67] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

- 23 -

respect to any purported claim related to an alleged agreement between Willis-Knighton and Humana. It is difficult to understand how the Amended Complaint could be read as asserting such a claim when Humana's name does not appear even once in the Amended Complaint. Also noticeably absent is any allegation regarding the Medicare Advantage market, Willis-Knighton's alleged role in that market, or Humana's purported relationship with Willis-Knighton. Because Vantage does not assert any claim in this litigation with respect to the alleged agreement between Willis-Knighton and Humana, Humana's documents (which are allegedly offered in support of Vantage's nonexistent claim) are irrelevant to any issue in this case. Accordingly, the public has no interest in viewing Humana's confidential documents.

> 2. *The District Court further abused its discretion in unsealing admittedly irrelevant information.*

While Vantage may dispute whether some of Humana's documents are generally relevant to the litigation, it openly conceded at the unsealing hearing that certain portions of the documents were irrelevant but nonetheless sought their unsealing. One example is illustrative.

In considering whether drafts of one confidential Humana contract with Willis-Knighton should be unsealed, Humana requested that certain information

- 24 -

regarding its reimbursement structure for lab services be sealed.[68]  The District

Court specifically asked Vantage to articulate the relevance of that portion of the

contract.[69]  Vantage responded by openly admitting that it had no intention of using

that portion of the document for any purpose.[70]  Nonetheless, the District Court

summarily dismissed Humana's concerns regarding the harm it would face if its

confidential contract terms were disclosed to its competitors while simultaneously

failing to properly consider that the public has no discernible interest in documents

*admittedly irrelevant* to the underlying proceeding.

This example clearly illustrates the District Court's decision to eschew this

Court's established framework for the analysis of sealing requests.  This Court has

repeatedly emphasized that courts must weigh the public's interest in accessing the

documents at issue against the private interests favoring nondisclosure.[71]  Yet, the

District Court decided not to examine what interest, if any, the public had in

---

[68] ROA.16997.  To be clear, Humana requested that the entire draft contract amendment be sealed because it would provide a valuable insight to Humana's competitors regarding Humana's business and contract negotiation strategy and contained detailed information regarding Humana's reimbursement structure.  When the District Court denied that request, Humana sought to obtain certain redactions of the most damaging information, this example pertains to one such request.

[69] ROA.16994.

[70] ROA.16994.

[71] *See e.g. Sealed Search Warrants*, 868 F.3d at 397-98; *Van Waeyenberghe*, 990 F.2d at 849.

PD.22904242.2

viewing Humana's confidential documents.  Of course, in the absence of an assessment of the public's interest, the District Court was unable to weigh that interest (if any) against Humana's recognized interest in maintaining the confidentiality of the documents.  Because neither Vantage nor the District Court identified, much less weighed, the public's interest in Humana's documents, the District Court abused its discretion in permitting the unsealed filing of those irrelevant documents notwithstanding Humana's substantial interest in maintaining the confidentiality of its sensitive business information.

## IV. <u>HUMANA DEMONSTRATED THAT IT WILL BE SUBSTANTIALLY HARMED BY THE DISCLOSURE OF ITS CONFIDENTIAL BUSINESS INFORMATION</u>

Because the District Court never identified any particular public interest in viewing Humana's documents, it was improper for it to force Humana to demonstrate that Humana's interest in keeping the contents of the documents confidential outweighed the theoretical, unidentified, public interest.  Nonetheless, Humana certainly met its burden on this issue.  As a preliminary matter, it is well-established that "courts have refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing."[72]

---

[72] *Nixon*, 435 U.S. at 598.  The concepts in *Nixon* are intensified when it is a non-party being harmed by disclosures of confidential materials.

- 26 -

Humana established that it would be harmed by the public disclosure of its confidential contract negotiations and contract terms with Willis-Knighton. First, Humana offered specific sworn testimony that its negotiation strategies and reimbursement rates were proprietary to it, and that, if disclosed publicly, Humana's competitors would obtain otherwise-confidential information that would substantially harm Humana's standing in the marketplace.[73] Second, Humana cited to specific cases where courts have sealed <u>exactly the same sort of confidential information</u> Humana seeks to seal here.[74] Finally, Humana made repeated attempts to bring these arguments to the attention of the District Court during the sealing hearings.[75] In short, Humana repeatedly argued, and actually demonstrated, that the public disclosure of its confidential contract negotiations and proprietary contract terms would disclose Humana's trade secrets and significantly injure Humana's competitive standing in the marketplace.

---

[73] *See e.g.*, ROA.4699 ¶ 4-9.

[74] *See, e.g., Bear Ranch*, 2014 WL 12599343, at *1 (sealing documents that "at least arguably refer to proprietary information."); *Saint Alphonsus*, 2015 WL 632311, at *5 (sealing documents containing "some mixture of negotiating strategy, prices, rates, projections, and other financial information").

[75] *See e.g.*, ROA.16738:23-16739:1; ROA.17114:18-17115:18, 17117:2-10, 17118:19-17119:4, 17120:8-12; ROA.16956:23-16957:5.

## V.    **WHEN PROPERLY CONSIDERED UNDER THIS COURT'S SEALING ANALYSIS, HUMANA'S DOCUMENTS SHOULD BE SEALED.**

As described above, the District Court skipped the first two steps in this Court's well-establish framework for analyzing sealing issues.  Those omissions alone constitute an abuse of its discretion and justify reversal.  Moreover, because the evidence in the record on appeal conclusively demonstrates that Humana's documents should have been sealed by the District Court, this Court should render its decision in Humana's favor on this issue and order that Humana's documents be maintained under seal.

First, because 49 of the 50 Humana documents placed at issue by Vantage were not judicial records at the time of the sealing hearings, the public has no interest in accessing those documents and the District Court's order to the contrary should be reversed.  Moreover, with respect to the single document that was a judicial record at the time of the sealing hearing (or even if the Court considers the 11 documents subsequently attached to Vantage's supplemental memorandum), Vantage has not demonstrated that those records are judicial records either.  Vantage submitted those documents as part of its effort to convince the District Court that it had pled an antitrust conspiracy claim related to Willis-Knighton's

- 28 -

relationship with Humana.[76]  Of course, Humana's documents have absolutely no relevance to the threshold question before the District Court—whether Vantage's pleadings contains its newfound (and never plead) claim regarding Humana, which is not a party to the litigation.  Accordingly, because Humana's documents are not relevant to the issues before the District Court, the public has no interest in accessing them.

Second, even if the few Humana documents actually submitted by Vantage are marginally relevant to the issues before the District Court and thus can be viewed as judicial records, neither the District Court nor Vantage made any effort to articulate or weigh the public's interest in the Humana documents.  Had the District Court conducted this mandatory analysis, it would have determined that the public interest in Humana's documents is relatively low.  The documents relate to a claim that has not been pled in the litigation.  Moreover, as Willis-Knighton has aptly demonstrated, even if Vantage's nonexistent Humana claim had been pled, it is without legal merit as a matter of law.[77]  Because the Humana documents relate solely to a claim that does not exist, either because it has not been pled or

---

[76] It bears repeating that Vantage claims to have accomplished this feat without mentioning Humana in its Amended Complaint.

[77] ROA.7155; ROA.41139.

- 29 -

fails as a matter of law, the public's interest in viewing the documents is *de minimus*—if its exists at all.

With regard to the third step of the analysis, in contrast, Humana's interest in preserving the confidentiality of its sensitive documents is high. Many of the documents contain detailed pricing information regarding Humana's reimbursement rates with Willis-Knighton. Others contain details regarding Humana's claims payment structure. Finally, most of the documents are emails documenting confidential contract negotiations between Humana and Willis-Knighton. Those negotiations, if open to Humana's competitors, would provide valuable insight into Humana's business strategies, its contract negotiations strategies, and its specific business practices. Moreover, if Willis-Knighton's competitors (*i.e.* other hospitals) obtained information regarding Humana's contractual agreements with Willis-Knighton, such disclosures would inevitably impact Humana's ability to negotiate competitive contracts with other hospitals, who then could base their contract negotiation strategy on Willis-Knighton's contract with Humana. For these reasons, other courts have not hesitated to seal similar documents in similar cases.[78]

---

[78] *See e.g.*, *Saint Alphonsus*, 2015 WL 632311, at *5 (sealing documents containing "some mixture of negotiating strategy, prices, rates, projections, and other financial information").

- 30 -

When the public's nonexistent or, at best, very low interest in accessing Humana's documents is weighed against Humana's substantial interest in preserving the confidentiality of its contract negotiations, business strategies, pricing structure, and reimbursement rates the result is clear—Humana's interest in preserving the confidentiality of its proprietary and competitively sensitive business information far outweighs whatever marginal interest the public may have in Humana's documents. Accordingly, because the record is clear on this issue, this Court should reverse the decision of the District Court and render judgment in Humana's favor ordering that Humana's documents must be filed, if at all, under seal.

## CONCLUSION

The District Court abused its discretion in unsealing a large volume of Humana's confidential business information, most of which have not been filed in the underlying litigation. The District Court erred in unsealing documents that are not, and have never been, judicial records. The Court compounded that error by completely refusing to consider, much less weigh, whether the public has any interest in viewing Humana's confidential information, as this Court has instructed. The District Court completed its error by ignoring Humana's substantial evidence regarding the injury it would sustain if its documents were made public and by

- 31 -

failing to weigh Humana's interest in the confidentiality of its documents against the public's limited, and arguably nonexistent, interest in accessing Humana's documents. Pointedly, this was the purpose and assurance provided by the Protective Order governing production of documents, particularly those produced by third parties in compliance with Rule 45 subpoenas. For any, and indeed all, of the foregoing reasons, Humana respectfully requests that this Court reverse the District Court's unsealing order and order that Humana's confidential and proprietary documents be maintained under seal.

Respectfully submitted,

BY:  */s/ Harry Rosenberg*
Harry Rosenberg, (Bar #11465)
Christopher K. Ralston, (Bar #26706)
Arthur R. Kraatz, (Bar #35194)
**PHELPS DUNBAR LLP**
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  504-566-1311
Facsimile:  504-568-9130
Email: harry.rosenberg@phelps.com
        ralstonc@phelps.com
        arthur.kraatz@phelps.com

**ATTORNEYS FOR NON-PARTY RESPONDENT-APPELLANT HUMANA HEALTH BENEFIT PLAN OF LOUISIANA, INC.**

- 32 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2018, I electronically filed the foregoing with the Clerk of Court by using the Court's electronic filing system, which will send a notice of electronic filing to all participating counsel of record.

Respectfully submitted,

BY: */s/ Harry Rosenberg*

Harry Rosenberg
Christopher K. Ralston
Arthur R. Kraatz
Attorneys for Non-Party Respondent-Appellant Humana Health Benefit Plan of Louisiana, Inc.

PD.22904242.2

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE
## <u>REQUIREMENTS AND TYPE STYLE REQUIREMENTS</u>

1.      This brief complies with the type-volume limitation of Fed R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), it contains 7,011 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

Respectfully submitted,


BY:   */s/ Harry Rosenberg*
        Harry Rosenberg
        Christopher K. Ralston
        Arthur R. Kraatz
        Attorneys for Non-Party Respondent-
        Appellant Humana Health Benefit Plan
        of Louisiana, Inc.

Dated: January 23, 2018

PD.22904242.2