PUBLIC – REDACTED

No. 17-30867

*In the*

# United States Court of Appeals
### *for the*
## Fifth Circuit

―――――――――

VANTAGE HEALTH PLAN, INCORPORATED,
*Plaintiff-Appellee*

*v.*

WILLIS-KNIGHTON MEDICAL CENTER,
DOING BUSINESS AS WILLIS-KNIGHTON HEALTH SYSTEM,
*Defendant*

*v.*

HUMANA HEALTH BENEFIT PLAN OF LOUISIANA, INCORPORATED,
*Appellant*

―――――――――

On Appeal from an Order of the United States District Court
for the Western District of Louisiana, No. 5:15-cv-02057

―――――――――

## VANTAGE HEALTH PLAN, INC.'S ANSWERING BRIEF
―――――――――

SCOTT L. ZIMMER
  *Kean Miller LLP*
  *333 Texas Street, Suite 450*
  *Shreveport, LA 71101*
  *(318) 562-2655*
  *scott.zimmer@keanmiller.com*

JAMES R. CHASTAIN, JR.
  *Kean Miller LLP*
  *11 City Plaza*
  *400 Convention Street, Suite 700*
  *Baton Rouge, LA 70802*
  *(225) 387-0999*
  *sonny.chastain@keanmiller.com*

ROBERT E. BLOCH
MICHAEL B. KIMBERLY
  *Mayer Brown LLP*
  *1999 K Street NW*
  *Washington, DC 20006*
  *(202) 263-3000*
  *rbloch@mayerbrown.com*

CHRISTOPHER J. KELLY
  *Mayer Brown LLP*
  *2 Palo Alto Square Ste. 300*
  *3000 El Camino Real*
  *Palo Alto, CA 94306*
  *(650) 331-2025*
  *cjkelly@mayerbrown.com*

*Counsel for Plaintiff-Appellee Vantage Health Plan, Inc.*

PUBLIC – REDACTED

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

### Parties in the district court or on appeal

- BRFHH Shreveport, LLC d/b/a University Health Shreveport

- Biomedical Research Foundation of Northwest Louisiana, sole owner of BRFHH Shreveport, LLC

- Humana Health Benefit Plan of Louisiana, Inc.

- Humana Inc., parent company of Humana Health Benefit Plan of Louisiana, Inc.

- Vantage Health Plan, Inc.

- Vantage Holdings, Inc., parent company of Vantage Health Plan, Inc.

- Willis-Knighton Medical Center d/b/a Willis-Knighton Health System

### Law firms representing the parties in the district court or on appeal

- Blanchard, Walker, O'Quin & Roberts

- Coats Rose

- Crowell & Moring LLP

- Honigman Miller Schwartz and Cohn LLP

- Kean Miller LLP

- Mayer Brown LLP

**Law firms representing the parties
in the district court or on appeal—continued**

- Norton Rose Fulbright US LLP

- Phelps Dunbar LLP

- Pugh, Pugh & Pugh LLP

- Sullivan Stolier Schulze & Grubb

**Individual lawyers representing the parties
in the district court or on appeal**

- Vinson J. Knight
- James R. Chastain, Jr.
- Linda R. Rodrigue
- Scott L. Zimmer
- Robert E. Bloch
- Scott P. Perlman
- Reginald R. Goeke
- Christopher J. Kelly
- Daniel K. Storino
- Layne E. Kruse
- Darryl W. Anderson
- Michael M. Meunier

- Eliot F. Turner
- Lesley C. Reynolds
- Marc B. Collier
- Lamar P. Pugh
- David A. Ettinger
- Jason R. Abel
- Lara Fetsco Phillip
- Arthur R. Kraatz
- Christopher K. Ralston
- Harry Rosenberg
- Shari Ross Lahlou
- Michael B. Kimberly

/s/ *Robert E. Bloch*

ii

## STATEMENT REGARDING ORAL ARGUMENT

This interlocutory appeal concerns the sealing of documents and thus implicates a simple matter of the district court's discretion to manage its courtroom and docket. Oral argument is not necessary.

## TABLE OF CONTENTS

Certificate of Interested Persons...............................................................................i

Statement Regarding Oral Argument ...................................................................iii

Table of Authorities............................................................................................v

Introduction .......................................................................................................1

Issue Presented for Review................................................................................3

Statement of the Case........................................................................................3

    A. Factual background .............................................................................3

    B. Procedural background.........................................................................7

        1. Humana's production.....................................................................7

        2. The amendment of the protective order .........................................8

        3. The sealing briefing and hearings ...............................................10

Summary of the Argument................................................................................16

Standard of Review ..........................................................................................18

Argument .........................................................................................................19

I.   Humana bears the burden of overcoming the presumption
in favor of public access .............................................................................19

II.  Judge Foote did not abuse her discretion by rejecting
Humana's request for blanket sealing..........................................................23

    A. The public has a strong interest in disclosure of highly
relevant evidence like the documents concerning Willis-
Knighton's exclusivity agreement with Humana ...........................24

    B. Humana has not articulated a real and substantial interest
that would justify depriving the public of access..........................27

III. The protective order and redaction requirements
adequately protect Humana's interest in confidentiality....................31

Conclusion........................................................................................................33

# TABLE OF AUTHORITIES

*Center for Auto Safety v. Chrysler Grp., LLC,*
809 F.3d 1092 (9th Cir. 2016) ....................................................................19

*Citizens First Nat'l Bank v. Cincinnati Ins.,*
178 F.3d 943 (7th Cir. 1999) ................................................................. 30-31

*Diaz v. Kaplan Higher Educ., L.L.C.,*
820 F.3d 172 (5th Cir. 2016) ....................................................................21

*Erfindergemeinschaft Uropep GbR v. Eli Lilly and Co.,*
2017 WL 434207 (E.D. Tex. Feb. 1, 2017).......................................... 19-21

*Eugene S. v. Horizon Blue Cross Blue Shield of N.J.,*
663 F.3d 1124 (10th Cir. 2011) ............................................................. 20-21

*Fed. Sav. & Loan Ins. Corp. v. Blain,*
808 F.2d 395 (5th Cir. 1987) ....................................................................19

*Floral Accounting Sys., Inc. v. Florists' Transworld Delivery,*
2008 WL 2224416 (W.D. La. May 29, 2008) ............................................19

*FTC v. Penn State Hershey Medical Ctr.,*
838 F.3d 327 (3d Cir. 2016)......................................................................20

*Heinsohn v. Carabin & Shaw, P.C.,*
832 F.3d 224 (5th Cir. 2016) ....................................................................18

*Helm v. Kansas,*
656 F.3d 1277 (10th Cir. 2011) ................................................................20

*In re High Sulfur Content Gasoline Prods. Liab. Litig.,*
517 F.3d 220 (5th Cir. 2008) ....................................................................24

*Impossible Electronics Techniques, Inc. v.*
*Wackenhut Protective Systems, Inc.,*
669 F.2d 1026 (5th Cir. 1982) ..................................................................26

*California ex rel. Lockyer v. Safeway Inc.,*
355 F. Supp. 2d 1111 (C.D. Cal. 2005) ....................................................20

*Moreno v. LG Elecs., USA Inc.*,
   800 F.3d 692 (5th Cir. 2015) ....................................................................21

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) ..............................................................................20, 28

*Nunez v. Allstate Ins. Co.*,
   604 F.3d 840 (5th Cir. 2010) ....................................................................18

*Osuchukwu v. INS*,
   744 F.2d 1136 (5th Cir. 1984) ..................................................................30

*Putnam v. Williams*,
   652 F.2d 497 (5th Cir. 1981) ....................................................................26

*Saint Alphonsus Med. Ctr.–Nampa, Inc.*,
   2015 WL 632311 (D. Idaho Feb. 13, 2015) ..............................................31

*SEC v. Van Waeyenberghe*,
   990 F.2d 845 (5th Cir. 1993) ....................................................................19

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,
   825 F.3d 299 (6th Cir. 2016) ....................................................................20

*Stotter v. Univ. of Tex. at San Antonio*,
   508 F.3d 812 (5th Cir. 2007) ....................................................................30

*United States v. Holy Land Found. for Relief & Dev.*,
   624 F.3d 685 (5th Cir. 2010) ............................................... 18-19, 24, 27

*United States v. Int'l Harvester Co.*,
   720 F.2d 418 (5th Cir. 1983) ....................................................................30

*United States v. Ladd*,
   218 F.3d 685 (5th Cir. 2010) ....................................................................19

*United States v. Santos*,
   589 F.3d 759 (5th Cir. 2009) ....................................................................30

*Wilk v. American Medical Ass'n*,
   895 F.2d 352 (7th Cir. 1990) ....................................................................20

### INTRODUCTION

This is a simple appeal in the midst of a complex federal antitrust case, in which numerous hospitals and health insurers—including non-party-appellant Humana Health Benefit Plan of Louisiana and plaintiff-appellee Vantage Health Plan—have produced thousands of documents in discovery. Defendant Willis-Knighton Medical Center and several non-party subpoena recipients, including Humana, attempted to seal many of the documents. This appeal arises from the district court's rulings on Humana's attempts to keep its documents from public view.

After two days of hearings in which the parties and the district court reviewed hundreds of assertions of confidentiality document-by-document and line-by-line, District Judge Elizabeth Foote ruled that health insurers' and hospitals' reimbursement rates, fee schedules, year-to-year fee increases, and bonuses should be redacted from all documents that are filed on the public docket in this case. She concluded that all exhibits to the parties' filings should otherwise be publicly accessible. At the same time, any documents that were produced in discovery, designated "highly confidential," but *not* filed on the court's public docket would remain subject to the court's protective order, which provided that the documents be afforded "attorneys' eyes only" treatment.

In reaching her decisions, Judge Foote meticulously applied settled law to the complex facts of this case. She balanced the public's interest in open

court proceedings and the relevance of the documents to the underlying claims against the parties' assertions of confidentiality and harm. She also considered the serious administrative burdens that excessive sealing had placed on the Clerk's Office and her courtroom up to that point.

Humana now appeals Judge Foote's refusal to seal 50 of Humana's documents on a blanket basis. But its arguments are premised on a number of basic misunderstandings of both the law and the facts. Humana asserts, in the main, that Judge Foote was wrong to "unseal" 49 documents that have not yet been filed on the public docket because they are not yet "judicial records" to which the public has a presumptive right of access. But documents that have not yet been filed on the docket cannot logically be sealed *or* unsealed; they are instead simply subject to the district court's protective order, which in this case is adequate to protect any commercially sensitive information that the documents might contain. Although Judge Foote repeatedly confirmed this at the hearings and in her written orders, Humana ignores this point.

In ruling that the 49 documents should not be categorically sealed *when and if* they are filed on the public docket, Judge Foote considered Humana's arguments, reviewed the documents closely, and held that the documents are entitled to the same redactions as all the other evidence, but no more. In now resisting that decision, Humana attempts to foist its burden of proof onto Vantage, asserting that it is Vantage's responsibility to demonstrate that the

public has a strong interest in access to Humana's documents. Setting aside

that the documents are smoking-gun evidence that the public has a strong

interest in seeing, that simply is not Vantage's burden to bear. It is beyond

debate that Humana, as the moving party, bears the burden of proving that

its interest in secrecy outweighs the presumption of public access.

And therein lies the problem. Humana has never actually articulated

the harm that it would supposedly suffer from public disclosure of the

allegedly embarrassing documents at issue here, either before Judge Foote or

this Court. It offers only circular reasoning: Its "confidential" contract

negotiations must be sealed because they are "confidential." But the law de-

mands more than Humana's say-so. Judge Foote acted within her discretion

to deny Humana's attempt to seal the documents on a blanket basis.

## ISSUE PRESENTED FOR REVIEW

Did the district court abuse its discretion by deciding—after two days of

hearings and a painstaking review of the evidence—that certain documents

that are at the heart of Vantage's antitrust claims should be redacted but not

categorically sealed?

## STATEMENT OF THE CASE

### A.     Factual background

**1.**  This case, in a nutshell, is about defendant Willis-Knighton Medical

Center's anticompetitive effort to become and remain the "must-have" health

system for health insurers selling insurance products in the Shreveport-

3

Bossier City area. The centerpiece of Willis-Knighton's anticompetitive strategy has been a years-long campaign of acquiring competing physicians and physician practices—not merely hiring physicians, but acquiring their books of business and patient volumes and absorbing their business operations. *See* ROA.7444.

Willis-Knighton's strategy has worked. Its position in the Shreveport market for healthcare services is now so dominant (*e.g.*, ROA.12396-12397, 12405) that health insurance companies cannot market successful insurance products in the Shreveport-Bossier City area without including Willis-Knighton as an "in-network" provider. *See, e.g.*, ROA.12441, 12453:2-12455:20, 40117:22-40126:19 (sealed). And for that reason, Willis-Knighton has been able to extract supracompetitive reimbursement rates from health insurers. *See, e.g.*, ROA.12116, 12438:10-21.

**2.** Extracting supracompetitive reimbursement rates for Medicare Advantage insurance products proved more complicated, however, because the government-set Medicare rates generally set a ceiling on Medicare Advantage reimbursement rates. *See* ROA.12685-12691.

But Willis-Knighton found a workaround: By entering into an un-written exclusivity arrangement with Humana for contracted Medicare Advantage patients, Willis-Knighton lent its physician-market monopoly to Humana, which—as a result of the exclusivity deal—became the only insurer able to successfully market Medicare Advantage products in the Shreveport-

Bossier City area. This enabled Humana—which now has over 80% of Medicare Advantage enrollees in the area (*see* ROA.39866 (sealed))—to demand higher rates from consumers for their Medicare Advantage policies and to collect an outsized share of the government's payments for local enrollees. Humana, in turn, compensated Willis-Knighton for the exclusivity deal ███████████████████████ effectively conferring supracompetitive reimbursements for Medicare Advantage services.

**3.** The documents that Humana seeks to keep under wraps through this appeal are smoking-gun evidence of its exclusivity arrangement with Willis-Knighton. The documents show that, well before they began negotiating their 2015 contract renewal,  ROA.40382 (sealed).

When Humana told Willis-Knighton in 2015 that, ████████████████ ████████████████████ (ROA.40390 (sealed)), Willis-Knighton refused, not to continue the agreement or ██████████████████████ but to put it into writing. Humana persisted: Because it wanted to ensure ██████ ████████████████████████



ROA.40418 (sealed). But Willis-Knighton again balked, insisting instead on

ROA.39761

(sealed); *accord* ROA.40402

Humana eventually relented, keeping the

arrangement as an unwritten "gentleman's agreement."

The relevant documents leave no doubt about the agreement's existence. As one of Physician Network's administrators put it to his Humana counterpart:



ROA.40381 (sealed).

**4.** In exchange for this so-called "gentlemen's agreement" on exclusivity, Humana continued to steer its market-share-leading number of Medicare Advantage enrollees to Willis Knighton physicians and hospitals

The evidence

plainly shows that the exclusivity deal with Humana foreclosed substantial

competition in the relevant hospital and physician service markets (*see* ROA.39866 (sealed)), and prevented Vantage and other health insurers from entering into Medicare Advantage contracts with the Willis-Knighton Physician Network.

### B.    Procedural background

#### 1.    *Humana's production*

In February 2016, after obtaining documents in discovery concerning the "gentlemen's agreement," Vantage issued Humana a subpoena specifically seeking documents relating to the exclusivity deal with Willis-Knighton. Humana denied the documents' existence, but on Vantage's motion to compel, the magistrate judge concluded that "it is very likely that Humana has (or had) emails relevant to the alleged exclusivity language (regarding Medicare Advantage) that was discussed during contract negotiations between Humana and Willis-Knighton" and ordered their production. ROA.4273.

Humana produced 163 purportedly non-existent documents, including numerous internal 2015 emails that it should have produced in response to the subpoena Vantage had served on it in February 2016. But its production came the day after the parties' summary judgment briefing had been filed. Judge Foote—concluding that the "gentlemen's agreement" was highly relevant to Vantage's claims—thus reopened fact discovery to permit Vantage to depose Willis-Knighton and Humana executives about the exclusivity

arrangement (ROA.5340) and ordered supplemental summary judgment briefing on the issue (ROA.5481). *See* ROA.41014 (Vantage's brief) (sealed); ROA.41139 (Willis-Knighton's brief) (sealed).

Among the 163 documents that Humana finally produced, designated as "attorney's eyes only" pursuant to the district court's protective order, are 49 of the 50 documents involved in this appeal. Many of these 49 are emails that are part of the same chain; eliminating redundancies among them, the 50 documents at issue thus boil down to 24 independent, non-overlapping documents. *See* ROA.5459-5461; *accord, e.g.,* ROA.16950:6-17. In November 2017, Vantage filed 12 of the documents, along with another document virtually identical to a thirteenth, as exhibits to its supplemental summary judgment briefing on the "gentlemen's agreement"; all of those documents remain provisionally sealed, pending this appeal. *See* ROA.4280, 41011 (sealed). The remaining documents Humana produced have not been filed on the district court's public docket; they remain subject to the protective order. ROA.848-849; *accord, e.g.,* ROA.16956:7-16.

### 2.    *The amendment of the protective order*

While summary judgment briefing was underway, Judge Foote came to the conclusion that, in producing documents in this litigation, all of the parties (including Humana) had over-designated documents as confidential, leading to an excessive number of summary judgment materials being filed under seal. The use of "boilerplate" sealing motions and the "pro forma

sealing" of exhibits were "creat[ing] issues not only for the Court itself, but also for the internal operating system of the Clerk's Office." ROA.4278. Concluding that the earlier-entered protective order was "extremely broad and [too] permissive," Judge Foote thus narrowed the order, provisionally denied 39 pending motions to seal, and ordered the summary judgment briefing to be re-filed after the completion of a process she designed for determining what could be sealed in the future. ROA.4279-4280.

The prescribed process was practical and straightforward: "Before filing any document designated as 'confidential,' the party proposing the filing" was to "contact the party who has designated the document as 'confidential' and request permission to file the discovery as unsealed in the public record." ROA.4279. Such permission was "not [to] be unreasonably denied." *Id.* "In the event that such permission [was] denied," the party proposing to file was to seek "leave of court . . . [before] fil[ing] under seal" through a motion to seal, or to file a "rule to show cause, demanding the opposing party or third party explain to the court why it will not allow its documents to be filed in the open record." *Id.*

Judge Foote reminded the parties that there is a "presumption of open records in the court system," and it is the obligation of the party seeking to keep a document sealed "to enunciate a *specific, compelling reason* to seal each pleading or individual exhibit." ROA.4280 (emphasis added). Absent such a showing as to documents, "they will not be sealed." *Id.*

9

### 3.     *The sealing briefing and hearings*

Applying this process, Judge Foote required each party to file a motion to seal as to materials it still wished to file under seal in light of her guidance, and rules to show cause as to materials another party or third-party wished to keep under seal. On July 7, 2017, Vantage thus notified Humana of the two Humana documents it had included with its opposition to Willis-Knighton's summary judgment motion. ROA.4480-4482. That same day, however, Humana produced an additional 163 documents on the "gentlemen's agreement." Vantage determined that 49 were candidates for inclusion in its supplemental summary judgment briefing. It thus issued a supplemental notice to Humana, so that Humana could indicate whether it would seek to have any of those 49 documents filed under seal if Vantage used them. ROA.4483. Humana responded that it believed all these documents should be filed under seal, so on August 11, Vantage filed its rule to show cause against Humana, formally informing Humana of its opportunity to respond in writing and appear at a hearing on September 15, 2017. ROA.34239. The rule to show cause discussed the court's standard for sealing and the specific reasons why the 50 Humana documents at issue here should not be sealed.[1]

---

[1] Vantage's rule to show cause was directed also to Willis-Knighton and six other third parties. ROA.34239. Judge Foote's resolution of the rule to show cause as to them is not at issue in this appeal; nor is her resolution of Willis-Knighton's motion to seal and the rules to show cause filed by Willis-Knighton and Plaintiff BRFHH-Shreveport, LLC at issue here.

**a.** To address the sealing motions and rules to show cause in connection with the summary judgment and *Daubert* motions, Judge Foote held 15 hours of hearings on September 15, 2017 and October 13, 2017, reviewing the materials in question prior filings "on a page-by-page, document-by-document basis." ROA.16708:6-7; s*ee also* ROA.5482-5483.

Judge Foote opened the September hearing with a thorough statement of the prevailing legal standard. *See* ROA.16707:24-16715:1. She acknowledged settled Supreme Court and Fifth Circuit precedents that hold "[a] district court's discretion to seal judicial records should be exercised charily" and that the court "must reach its decision in light of the strong presumption that all trial proceedings should be subject to scrutiny by the public." ROA.16708:18-20, 16709:1-3.

After recounting the myriad benefits of holding judicial records open to the public (ROA.16709:11-16710:18), Judge Foote explained that "the court must balance the public's common law right of access against [the] interest favoring nondisclosure." ROA.16710:22-24. She stressed, however, that "[t]he party seeking to overcome the presumption of access bears the burden of showing that the interest [in] secrecy outweighs that presumption." ROA.16710:24-16711:1.

Consistent with the case law discussed above, Judge Foote stated that "[t]he public's interest in the document[s] is deemed weak if . . . the documents themselves have little to do with the [underlying claims]."

11

ROA.16711:17-20. But if "the document does have a lot to do with the court's ultimate exercise of its judicial powers" to resolve the underlying dispute, then the presumption in favor of openness is strong. ROA.16711:21-22. If, after this balancing analysis, the court "determines that a private interest justifies restricting the public's access to a certain document, the court must tailor the restriction such that it minimize[s] the burden on the public's right of access, such as sealing or redacting only those records or portions thereof that contain sensitive information." ROA.16712:2-7.

**b.** Humana's counsel argued at both hearings that the district court should not even consider Vantage's rule to show cause as to the 49 recently-produced documents regarding the "gentlemen's agreement" because Vantage had not yet filed them with its summary-judgment briefs. ROA.16954:15-16, 16731:6-16732:5. Judge Foote disagreed.

> I believe, as a matter of efficiency, that we need to go ahead and take up those exhibits in connection with this hearing and in any continuance of this hearing. . . . [I]f we disregard those 49 exhibits at this hearing, we will just have to address them later when Vantage actually does attempt to use them in connection with a motion or opposition; thus, this Court does not feel that it's an abuse of the process, but instead, simply a handling of the matters before the Court.

ROA.16732:10-22. In including these documents in its rule to show cause, Vantage was merely "following the provisions that the Court amended the protective order with." ROA.16954:5-6. "In other words," according to Judge Foote, "pre-filing, they are asking the Court to rule on whether or not these

would be filed under seal." ROA.16954:6-8. She concluded that "it would be inefficient to just simply delay this since we have this in front of us at this time." ROA.16955:15-18.[2]

Judge Foote therefore proceeded to apply the legal framework she had articulated in her review of each of the 50 challenged Humana documents, page by page. But counsel for Humana came unprepared to both hearings, offering instead only "broad, nonspecific assertion[s] of trade secret and confidentiality without a specific allegation of harm." ROA.16969:23-24. Thus, at the September hearing, counsel for Humana had the following candid exchange with Judge Foote:



---

[2]    Humana puzzlingly asserts (Opening Br. 5) that "Vantage sought leave of Court to file *en masse* fifty Humana documents into the public record in connection with some future, undisclosed, purpose." That is incorrect. In fact, Vantage merely sought the district court's judgment on the issue of whether it would have to file the documents under seal if it attached them to either its summary judgment or *Daubert* filings, just as Judge Foote had directed.

13

ROA.17119:5-17 (sealed).

Despite Judge Foote's clear instruction and admonition at the September hearing, a similar exchange ensued at the October hearing:

> **The Court:** [Counsel], if you have noticed, everybody else had provided me with this information in advance as to what they wanted redacted. All I had from Humana was the overall objection. And so we're—the Court is revisiting or visiting your objections for the first time here and has not had a chance to review and be able to rule quickly as I would have if I would have had your objections in advance.
>
> **Humana:** I understand and I apologize to the Court on behalf of Humana, Your Honor. I suspect we may be back again after the depositions of the Humana folks. Maybe not, if the Court rules on all these documents today. But I'm willing to provide our objections in writing and come back at the Court's convenience with Vantage's counsel so we could do it in a more orderly fashion.
>
> **The Court:** Well, I've got you here. And I've—every time we do this, I have to read these documents again and so I would like to go ahead and get it over with.

ROA.16967:21-16968:12. At neither hearing, nor in its response to the rule to show cause, did Humana suggest that the district court erred in allocating the burden of proof to it and the other parties seeking sealing.

Following this exchange, Humana offered improvised, contemporaneous objections. In ruling on each, Judge Foote carefully weighed the relevance of the documents that were subject to question. As to some lines of data, she

14

granted Humana's request to seal because she deemed them irrelevant to the plaintiffs' claims. *See, e.g.*, ROA.16963:24-16965:9 ("But based on Humana's objection and the [lack of] relevance of this to the overall case and the issues in the case, the Court would redact the year of the Medicare resource-base relative value scale."); ROA.16972:3-16 (similar). But—as particularly relevant here—Judge Foote determined that "the exclusivity agreement" between Willis-Knighton and Humana is "a very important issue in the case" (ROA.16966:12-14) and thus repeatedly refused to redact communications concerning the agreement. *See, e.g.*, ROA.16969:12-25.

    **c.** After a painstaking review "of every single exhibit, page by page, to determine whether it contained confidential, sensitive, or other information that would warrant maintaining it under seal," Judge Foote ultimately "agreed to seal information that revealed reimbursement rates and percentages, fee schedules, overall percentage increases from year to year, and amounts and percentages of bonuses," calling for "very limited" redactions of that information. ROA.5388-5399; *accord* ROA.5482-5483. But otherwise, the documents that originally had been filed under seal would be re-filed publicly. ROA.5388-5399. And moving forward, any documents not implicating the court's limited redaction requirements were to be filed publicly. *Id.* The protective order continued to cover documents designated "confidential" or "attorneys eyes' only" that had not been filed on the docket. *E.g.*, ROA.16707:10-12, 16764:1-4, 16837:22-24, 16956:7-16.

**d.** Humana moved for a stay of Judge Foote's orders to permit an appeal (ROA.5481), but it once again failed to specify even which documents or portions of documents it wished to keep sealed, let alone specific or compelling reasons why (*see* ROA.5486). Humana filed a corrected motion (ROA.6911, 86 (Dkt. 412, sealed)), and Judge Foote granted a two-week stay to permit Humana to move this Court for a stay pending appeal (ROA.6937), which it did and this court granted. ROA.15741.

## SUMMARY OF THE ARGUMENT

**I.** To obtain an order sealing its documents, Humana bears the burden of overcoming the presumption in favor of public access. It nevertheless attempts—for the first time on appeal—to shift the burden to Vantage to prove that the public's interest in disclosure is greater that Humana's (un-explained) interest in confidentiality. But that is not what the law says. This court and its sister circuits uniformly agree that the party seeking to seal a document bears the burden of overcoming the presumption favoring public disclosure.

In arguing otherwise, Humana would have this Court believe that its documents already were sealed at the time of the September 15 and October 13 hearings, and that Vantage had moved to "unseal" them. That is incorrect. As Humana acknowledges, its documents had not yet been filed on the public docket at the time of the hearings. They thus remained subject to the protective order but were not then sealed, which can happen only when a

document is publicly filed. The question posed at the hearings was whether the documents should be sealed when and if they are filed on the public docket, consistent with the procedure established by Judge Foote in the amended protective order.

Of course, even if (contrary to fact) Vantage *had* moved to "unseal" the documents, the burden still would be on Humana to show that its interests in secrecy continued to outweigh the public interest. Humana cites no case law suggesting otherwise.

**II.** Judge Foote did not abuse her discretion by rejecting Humana's request for blanket sealing. To begin with, the public has a strong interest in disclosure of highly relevant evidence like the documents at issue here. Humana attempts to escape that conclusion by characterizing the documents as *ir*relevant, concerning a "nonexistent" claim in the complaint. These are the same arguments that Judge Foote rejected in the proceedings below: As she explained, the "gentlemen's agreement" between Willis-Knighton and Humana is "very important" to this litigation—so much so that it justified reopening discovery and ordering supplemental summary judgment briefing. Humana's attempt to split the hairs of Vantage's complaint is no basis for holding otherwise.

On top of that, Humana has not articulated any real or substantial interest that would justify depriving the public of access. Instead, it offers the conclusory statements of a middle-management executive, who engages in

17

conclusion-assuming logic: Public disclosure of Humana's documents would be harmful to Humana because Humana has designated them "confidential." In other words, Humana's view is that Judge Foote abused her discretion by not taking Humana's own, naked say-so as an adequate basis for sealing the documents. Not only was Judge Foote right to reject that position, but it would have been an abuse of discretion to do otherwise.

**III.** Finally, Humana is wrong that its purportedly sensitive documents are now unprotected and can be disseminated willy-nilly. In fact, the protective order and Judge Foote's redaction requirements adequately protect Humana's interest in securing whatever sensitive information its documents might contain. Thus, Judge Foote's order should be affirmed.

## STANDARD OF REVIEW

This Court "review[s] the [district] court's decision to seal a judicial record for abuse of discretion." *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 689 (5th Cir. 2010).

Abuse of discretion is a "deferential" standard; as a general matter, a district court abuses its discretion only "when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 233 (5th Cir. 2016) (quoting *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010)).

18

## ARGUMENT

### I.    HUMANA BEARS THE BURDEN OF OVERCOMING THE PRESUMPTION IN FAVOR OF PUBLIC ACCESS

**A.** The starting point for any decision to seal a document is "the strong presumption that all trial proceedings should be subject to scrutiny by the public." *Holy Land Found.*, 624 F.3d at 690 (quoting *United States v. Ladd*, 218 F.3d 685, 704 (5th Cir. 2010)). In light of this presumption, "the district court's discretion to seal the record of judicial proceedings is to be exercised charily." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (quoting *Fed. Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987)). This is especially so where, as here, "the materials relate to dispositive issues in the case"; because Humana's documents relate to the pending summary judgment motions, "the interest in disclosure is at its greatest." *Erfinder-gemeinschaft Uropep GbR v. Eli Lilly and Co.*, No. 2:15-CV-1202-WCB, 2017 WL 434207, at *2 (E.D. Tex. Feb. 1, 2017).

In circumstances like these, "the burden on the party seeking to bar disclosure is the heaviest." *Uropep*, 2017 WL 434207 at *2 (citing *Center for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016)). That party "is accordingly required to make a compelling showing of particularized need to prevent disclosure." *Id.* (citing same).

It further strengthens the presumption that this is an antitrust case. *See Floral Accounting Sys., Inc. v. Florists' Transworld Delivery, Inc.*, No. 06-

19

1098, 2008 WL 2224416, at \*2-3 (W.D. La. May 29, 2008). Needless to say, there is a "strong [public] interest in effective enforcement of the antitrust laws." *FTC v. Penn State Hershey Medical Ctr.*, 838 F.3d 327, 352 (3d Cir. 2016); *accord Wilk v. American Medical Ass'n*, 895 F.2d 352, 371 (7th Cir. 1990) (recognizing "the public interest served by private antitrust suits"); *California ex rel. Lockyer v. Safeway Inc.*, 355 F. Supp. 2d 1111, 1125 (C.D. Cal. 2005) (finding "strong public interest in access to allegations of antitrust injury to the public"). In antitrust cases, "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 305 (6th Cir. 2016) (internal citations omitted).

It also should go without saying that the presumption's existence means that it falls to the "party seeking to file court records under seal [to] overcome" it. *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)). "To do so, 'the parties [seeking sealing] must articulate a real and substantial interest that justifies depriving the public of access to the records that inform [the court's] decision-making process.'" *Id.* at 1135-1136 (citing *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)); *see also Uropep*, 2017 WL 434207 at \*2 (discussing "the burden on the party seeking to bar disclosure").

20

In the proceedings before Judge Foote, it was therefore Humana's burden to "make a compelling showing of particularized need to prevent disclosure" (*Uropep*, 2017 WL 434207 at *2), to identify specific documents and lines of information that it wanted kept under seal, and to articulate a "real and substantial" harm (*Eugene S.*, 663 F.3d at 1135) that it would otherwise suffer, sufficient to overcome the strong presumption in favor of open court proceedings.

**B.** Humana attempts to shift the burden to Vantage by mischaracterizing the proceedings below as "Vantage's request to unseal Humana's documents," asserting that Vantage was required "to articulate what *specific* interest, if any, the public has in viewing the few Humana documents." Opening Br. 12. That gets matters backwards. Again, "[the] party seeking to file court records under seal" bears the burden of "overcom[ing] [the] presumption . . . that the public has a common-law right of access to judicial records." *Eugene S.*, 663 F.3d at 1135.[3]

Humana's contrary view appears to follow from its mistaken view of the procedural posture of the issue presented here. The aspect of Judge Foote's

---

[3]  Apart from being obviously wrong, Humana's attempt to shift the burden to Vantage is waived. Humana did not argue before Judge Foote that Vantage (or anyone other than Humana) bore the burden. Generally, speaking, "arguments not raised before the district court are waived and will not be considered on appeal." *Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 176-77 (5th Cir. 2016) (quoting *Moreno v. LG Elecs., USA Inc.*, 800 F.3d 692, 697 (5th Cir. 2015)).

21

order from which Humana appeals is her conclusion that 50 (or, excluding overlapping e-mails, 24 (*see* ROA.5459-5461)) of Humana's documents should not be sealed if they are filed on the court's docket. This was not a hypothetical exercise. Vantage was certain to file a substantial number of these documents with the supplemental summary judgment briefing that Humana's belated production necessitated. When it made that supplemental filing in November 2017, Vantage in fact included 12 of the subject documents (as well as a signed copy of a thirteenth) as exhibits. Thus, Judge Foote merely "rule[d] on whether or not these would be filed under seal" *when* placed on the docket (ROA.16954:6-8)—an approach that was both consistent with the amended protective order and made sense given that she was already reviewing the submissions of Willis-Knighton and others to seal numerous documents filed with the parties' summary-judgment briefing.

All of this matters because Humana dedicates a significant portion of its brief to the paradoxical observation that "at the time Vantage sought to unseal Humana's documents carte blanche, nearly all of the confidential documents were not 'judicial records' to which the public had any arguable right of access" because they had not been filed on the court's public docket. Opening Br. 13-14; see also, e.g., id. at 28-29.

That is a self-defeating assertion. Given that the documents had not yet been filed on the public docket, they logically could not yet have been sealed *or* unsealed. Rather, in raising the question whether the documents *should be*

sealed when filed on the public docket, Vantage was merely "following the provisions that the Court amended the protective order with," according to which it was "asking the Court to rule on whether or not [the documents] would be filed under seal" once Vantage filed them. ROA.16954:5-8.[4]

Humana thus is simply wrong when it characterizes the question on appeal as whether Judge Foote abused her discretion by granting Vantage's request to "unseal" Humana's documents. *E.g.*, Opening Br. 16-18. The question, instead, is whether Judge Foote acted within her discretion by refusing to seal documents Humana had unilaterally designated "attorneys' eyes only" once Vantage actually *did* file them publicly. On that question, Humana bore the burden of overcoming the presumption in favor of public disclosure. And as we now demonstrate, it failed to meet that burden.

## II.    JUDGE FOOTE DID NOT ABUSE HER DISCRETION BY REJECTING HUMANA'S REQUEST FOR BLANKET SEALING

Measured against the proper framework, Humana cannot seriously argue that Judge Foote abused her discretion. The evidence at issue here goes to the very heart of at least one of Vantage's claims. It describes an unlawful scheme in which Willis-Knighton shared its ill-gotten monopoly

---

[4]    Again, this does not mean that Humana's documents were left to float in the public wind absent an order to seal. Prior to its filing on the public docket, a confidential document produced in discovery may be protected (if at all) by a protective order. In this case, the parties stipulated to such an order, which restricts the dissemination of documents designated "confidential" or "attorneys' eyes only" during discovery. See ROA.850-854.

power with Humana by means of an exclusivity agreement, shutting out other insurers like Vantage for Medicare Advantage enrollees.

There is little wonder why Humana wants its inculpatory communications kept secret—like any silver-bullet evidence of unlawful conspiracy, the evidence is embarrassing to the company. But "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *Holy Land Found.*, 624 F.3d at 690 (second alteration in original) (quoting *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008)).

A.     **The public has a strong interest in disclosure of highly relevant evidence like the documents concerning Willis-Knighton's exclusivity agreement with Humana**

Humana takes the startling position that "[t]he public has no interest in accessing Humana's confidential and proprietary documents because those documents relate to a claim that does not exist." Opening Br. 20. In Humana's view, "Vantage's Amended Complaint contains no . . . claim" concerning its unlawful exclusivity arrangement with Willis-Knighton because "Vantage's Amended Complaint is devoid of allegations pertaining to Humana . . . or any other allegation that could plausibly be described as asserting a claim regarding an alleged conspiracy between Humana and Willis-Knighton." *Id.* at 21-23. Humana concludes that "Humana's documents

24

(which are allegedly offered in support of Vantage's nonexistent claim) are [therefore] irrelevant to any issue in this case." *Id.* at 24.

Those are the same meritless arguments that Willis-Knighton made when trying to escape responsibility for its illegal conduct before Judge Foote. ROA.7152-7153, ROA.41155-41156. Judge Foote correctly rejected them below, and this Court should reject them here.

**1.** All interested parties have been on notice from the start that Vantage believed that Willis-Knighton had refused to contract with it on competitive terms, including with respect to Medicare Advantage services. *See, e.g.*, ROA.2522 ¶ 22; 2525 ¶ 29; 2526-2527 ¶ 18; 2580 ¶ 182(b); 2595 ¶ 232. It turns out that Vantage's belief was especially well-founded: Because Willis-Knighton had engaged in a secret, exclusive deal with Humana, it had categorically refused to deal with Vantage (and all other significant health insurers) on *any* terms for Medicare Advantage products. Vantage cannot be faulted for not then knowing the underlying reason, given that Willis-Knighton never informed Vantage of the "gentlemen's agreement." Nor can the absence of that reason from the complaint be a bar to Vantage's pursuit of the claim.

Moreover, Humana and Willis-Knighton both have known for more than a year that Vantage was pursuing this theory; indeed, Willis-Knighton pursued discovery on the subject in depositions months before the parties' initial summary judgment briefing (*e.g.*, ROA.12956:16-12958:14), and

25

asserted in its own opening memorandum that it was entitled to summary judgment as to its exclusivity agreement with Humana. *See* ROA.7152-7155. Vantage, for its part, has argued that, even if Judge Foote concludes that the complaint did not adequately plead the exclusivity agreement, she should construe Vantage's briefing as a motion to conform the pleadings to the evidence, pursuant to *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1036 n.11 (5th Cir. 1982) and *Putnam v. Williams*, 652 F.2d 497, 499 (5th Cir. 1981). *See* ROA.12034.

**2.** Judge Foote, however, found it unnecessary to conform Vantage's pleadings. As she explained at the October 13, 2017 hearing, the question of "exclusivity" between Willis-Knighton and Humana is "a very important issue in the case." ROA.16966:12-14. And it was for precisely this reason that the she reopened fact discovery to permit Vantage to depose Willis-Knighton and Humana personnel about the "gentlemen's agreement" (ROA.5340) and ordered supplemental summary judgment briefing on the issue (ROA.5481). *See* ROA.41014 (Vantage's brief); ROA.41139 (Willis-Knighton's brief). Judge Foote would not have permitted additional discovery and supplemental summary-judgment briefing for the parties to address an "irrelevant" issue or "nonexistent" claim. Opening Br. 24.

Against this background, Humana's documents, which lay bare the history and terms of the "gentlemen's agreement," are not just relevant—they paint Humana's and Willis-Knighton's hands bright red. And because they

26

are so highly relevant, the public's interest in them is extraordinarily high. *See Holy Land Found.*, 624 F.3d at 690.

**3.** In a last-ditch argument on this point, Humana accuses Judge Foote of "decid[ing] not to examine what interest, if any, the public had in viewing Humana's confidential documents." Opening Br. 25-26. That is wrong, for all of the reasons we have just given.

Judge Foote recognized that, as the case law discussed above shows, "[t]he public's interest in [a] document is deemed weak" when "the documents themselves have little to do with the court's ultimate exercise of its judicial powers" to resolve the plaintiff's claims. ROA.16711:17-20. She went on, "[w]hen the document at issue is the basis for an adjudication on the merits, however, only the most compelling reasons can justify a total foreclosure of public and professional scrutiny." ROA.16711:23-16712:1. And as to the documents at issue in this appeal, she concluded that they are highly relevant and "very important." ROA.16966:14. It is not clear what more Humana thinks Judge Foote should have said.

**B.    Humana has not articulated a real and substantial interest that would justify depriving the public of access**

On the other side of the ledger, Humana does not offer anything to substantiate its assertion of confidentiality. Despite the critical importance of that issue to its bid for a reversal, Humana continues to offer mere hollow

generalities, dedicating barely one full page of its brief to the topic. *See* Opening Br. 26-27.

First, Humana says that it is "well-established" that courts should not allow their files "to serve . . . as sources of business information that might harm a litigant's competitive standing." Opening Br. 26 (quoting *Nixon*, 435 U.S. at 598). But that platitude merely describes why a district court may seal a document when a producing party actually establishes that disclosure would be seriously harmful to it. It defines the threshold Humana must cross; it does nothing, of itself, to help Humana cross it.

Next, Humana says that it "offered specific sworn testimony that its negotiation strategies and reimbursement rates were proprietary to it, and that, if disclosed publicly, Humana's competitors would obtain otherwise-confidential information that would substantially harm Humana's standing in the marketplace." Opening Br. 27. But the five conclusory sentences that it cites from the perfunctory declaration of its regional Vice President are hardly specific—they say only that Humana's negotiations are "confidential and proprietary" and that, therefore, Humana's competitors would "likely" obtain "an unfair competitive advantage" if they were disclosed. ROA.4699-4700 ¶¶ 5-9. There is no particularity in the declaration concerning any specific information in any specific document. Indeed, the declaration's assertions amount to nothing more than circular reasoning: Humana "would be harmed by the public disclosure of its confidential contract negotiations

28

and contract terms with Willis-Knighton" because if those negotiations are publicly disclosed, "Humana's competitors would obtain otherwise-confidential information." Opening Br. 27. That tautological rationale gets Humana nowhere.

Finally, Humana asserts that *other* courts in *other* cases have on occasion sealed the kind of communications that it seeks to keep sealed here, reasoning that Judge Foote therefore necessarily abused her discretion by not doing the same. *E.g.*, Opening Br. 11-12. According to Humana, in other words, it is a per se abuse of discretion to decline to seal emails at the say-so of a producing party when the party baldly asserts that the emails are "commercially sensitive" and that their disclosure "could cause significant competitive harm" (Opening Br. 5-6) because somewhere, another court did it. That line of reasoning is wrong in every conceivable respect.

For starters, Humana ignores the standard of review. As this Court has said in a range of contexts, the abuse-of-discretion standard grants district courts "leeway" (*Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 820 (5th Cir. 2007)) and "latitude" (*United States v. Int'l Harvester Co.*, 720 F.2d 418, 419 (5th Cir. 1983))—sometimes even "substantial latitude" (*United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009))—in deciding the issues put before them. It is not enough to show that there are grounds for disagreement with the outcome reached, which is the most that one can say when a different court reaches a different decision on similar facts. A district court's

29

judgment reviewed for abuse of discretion must be upheld "so long as it is not capricious, racially invidious, utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary rather than the result of any perceptible rational approach." *Osuchukwu v. INS*, 744 F.2d 1136, 1142 (5th Cir. 1984). In reality, Judge Foote's decision was unassailably *correct*. But even if there were room for disagreement on that point, not even Humana could seriously call her decision "capricious, . . . utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary." *Id.*

Humana also ignores that district courts may not "delegat[e]" to the parties the decision "to seal whatever portions of the record the part[ies] want[] to seal." *Citizens First Nat'l Bank v. Cincinnati Ins.*, 178 F.3d 943, 944 (7th Cir. 1999). Its position essentially boils down to the view that Judge Foote should have deferred to its unsubstantiated assertion that its negotiations are "commercially sensitive," without requiring more. But if Humana needs an example of what an actual abuse of discretion would look like, that is it: "The determination of good cause [to seal a judicial record] cannot be elided by allowing the parties to seal whatever they want." *Id.* at 945. "The judge is the primary representative of the public interest in the judicial process" and "may not rubber stamp a stipulation to seal the record." *Id.* That is, in effect, what Humana says Judge Foote should have done. She was right to refuse to do so.

30

## III.   THE PROTECTIVE ORDER AND REDACTION REQUIREMENTS ADEQUATELY PROTECT HUMANA'S INTEREST IN CONFIDENTIALITY

What we have said so far is more than enough to affirm Judge Foote's order concerning the sealing of Humana's documents. One final point bears emphasis: To hear Humana's telling of the tale, one would think that its documents will now all be flaunted publicly, exposing "some mixture of [Humana's] negotiating strategy, prices, rates, projections, and other financial information" to all who might have an interest. Opening Br. 12 (quoting *Saint Alphonsus Med. Ctr.–Nampa, Inc.*, No. 1:12-CV00560-BLW, 2015 WL 632311, at *5 (D. Idaho Feb. 13, 2015). That is absolutely false.

First, the 37 documents that were not attached to Vantage's supplemental summary judgment opposition remain subject to the district court's protective order, meaning that they are restricted to "attorneys' eyes only." They will not be shared with any competitors. Judge Foote noted this several times (ROA.16707:10-12, 16764:1-4, 16837:22-24, 16956:7-16), but Humana ignores the point.

Second, any documents that are (now or in the future) filed on the public docket are subject to Judge Foote's redaction requirements, which cover all "information that reveal[s] reimbursement rates and percentages, fee schedules, overall percentage increases from year to year, and amounts and percentages of bonuses." ROA.5388-5399; *accord* ROA.5482-5483. So,

31

even as to those documents that are publicly filed, Humana's rates and other financial information will remain confidential.

Finally, Humana worries that Vantage's attorneys can dump "*en masse*" all 50 of the disputed documents on the district court's docket regardless of their relevance to the issue being briefed. Opening Br. 5; *see also id.* at 16-17. Vantage has already filed 12 of those documents with its supplemental opposition to summary judgment, and unless this Court reverses, they will soon be unsealed (but redacted). To allay Humana's overblown concern, Vantage represents to this Court that it will not file any of the remaining documents subject to dispute in this appeal on the district court's docket without first complying, for a second time, with the procedures established by the amended protective order. *See* ROA.4279-4280. With that promise, Humana has nothing to complain about.

## CONCLUSION

The order below should be affirmed.

March 7, 2018

Respectfully submitted,

/s/ *Robert E. Bloch*

SCOTT L. ZIMMER
  *Kean Miller LLP*
  *333 Texas Street, Suite 450*
  *Shreveport, LA 71101*
  *(318) 562-2655*
  *scott.zimmer@keanmiller.com*

JAMES R. CHASTAIN, JR.
  *Kean Miller LLP*
  *11 City Plaza*
  *400 Convention Street, Suite 700*
  *Baton Rouge, LA 70802*
  *(225) 387-0999*
  *sonny.chastain@keanmiller.com*

ROBERT E. BLOCH
MICHAEL B. KIMBERLY
  *Mayer Brown LLP*
  *1999 K Street NW*
  *Washington, DC 20006*
  *(202) 263-3000*
  *rbloch@mayerbrown.com*

CHRISTOPHER J. KELLY
  *Mayer Brown LLP*
  *2 Palo Alto Square Ste. 300*
  *3000 El Camino Real*
  *Palo Alto, CA 94306*
  *(650) 331-2025*
  *cjkelly@mayerbrown.com*

*Counsel for Plaintiff-Appellee Vantage Health Plan, Inc.*

33

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g) and Fifth Circuit Rule 32.3, the undersigned counsel certifies that this brief:

(i)     complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,448 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)     complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a) because it has been prepared using Microsoft Office Word 2007 and is set in Century Schoolbook font in a size when printed of 14 points or larger.

Dated: March 7, 2018          /s/ *Michael B. Kimberly*

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing brief with the Clerk of the Court using the appellate CM/ECF system on March 7, 2018. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished via CM/ECF.

Dated: March 7, 2018          /s/ *Michael B. Kimberly*

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I certify that on March 7, 2018, the foregoing was transmitted to the Clerk of the U.S. Court of Appeals for the Fifth Circuit via the Court's CM/ECF system, and that (1) the required privacy redactions were made pursuant to Circuit Rule 25.2.13, (2) the electronic submission is an exact copy of the paper document pursuant to Circuit Rule 25.2.1, and (3) the document has been scanned with the most recent version of Microsoft Forefront Endpoint Protection and is free of viruses.

Dated: March 7, 2018        /s/ *Michael B. Kimberly*